**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EGENIOUS COLES, | |
| Plaintiff, | Civil Action No. 14-1612(FLW) |
| v. | |
| ZUCKER GOLDBERG & ACKERMAN, *et al.*, | **OPINION** |
| Defendants. | |

**WOLFSON, District Judge**:

Plaintiff Egenious Cole ("Plaintiff" or "Coles") brings the instant suit, alleging that Zucker, Goldberg and Ackerman, LLC ("ZGA"), Ballard Spahr ("Spahr") and PNC Bank, N.A. ("PNC"), who is a successor-in-interest to National City Mortgage Co. ("National City")[1], (collectively "Defendants"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692-1692(p), when Defendants allegedly wrongfully commenced a state foreclosure action against Coles in 2009 and fraudulently misrepresented that National City was the creditor-plaintiff. In the present matters, ZGA, as well as PNC and Spahr, move separately for a dismissal of the one-count Amended Complaint. For the reasons set forth herein,

---

[1]     The Court will refer to National City and PNC interchangeably.

Defendants' motions are **GRANTED** and Plaintiff's claims are dismissed without prejudice.

BACKGROUND

For the purposes of these motions, the Court recounts the allegations in the Amended Complaint and takes them as true.  On or about December 28, 2004, Plaintiff obtained a mortgage in the amount of $584,910.00 from National City concerning real property located in Plainfield, New Jersey. Pl.'s Am. Compl. ¶¶ 10-12. The Mortgage Note required Plaintiff to make monthly payments in connection with the subject residential home. Plaintiff paid the mortgage payments until March 1, 2009. Id. at ¶ 14. On or about April 1, 2009, National City declared the mortgage in default. Id. at ¶ 15. A Notice of Intention to Foreclose was issued to Plaintiff on May 28, 2009, naming National City as the lender. Id. at ¶¶ 13-15.  Notably, Plaintiff does not dispute that she was in default on the loan.

Subsequently, on August 5, 2009, defendant ZGA, as counsel for National City, filed a foreclosure action against Plaintiff in the Superior Court of New Jersey, Chancery Division, Union County. Id. at ¶ 15. On October 19, 2009, Coles filed an answer to the state court complaint contesting the foreclosure. Id. at ¶ 16.  In December 2009, during the discovery phase of the state court proceedings, Coles' counsel served several interrogatories on ZGA. Id. at ¶ 22. Specifically, Coles inquired about National City's

2

"role and/or connection with regard to the Note and Mortgage." Id. at ¶ 25.   Prior to answering these interrogatories, Spahr substituted as counsel for National City, and in August 2010, provided responses to Coles' interrogatories. See Id. at ¶¶ 23, 24. National City expressly stated that "[t]he Plaintiff, National City Mortgage Co. d/b/a Eastern Mortgage Services originated the loan at issue. The Note and Mortgage have not been assigned." Id. at ¶ 25.   Additionally, National City responded to another interrogatory regarding possession of the mortgage by stating that "National City has possession of the Note originally executed by the Defendant." Id. at ¶ 27.   Furthermore, when asked if the mortgage/note had been included or incorporated into any type of Trust, National City responded by stating "National City objects to this request as not relevant to the subject matter of this litigation. The Note and Mortgage have not be assigned." Id. at ¶ 9.

On September 13, 2013, the state foreclosure action was administratively dismissed without prejudice for lack of prosecution. Id. at ¶ 40; Am. Compl., Ex. J. However, on that same day, ZGA issued a notice to Plaintiff informing her that PNC, the successor-in-interest to National City, intended to revive the dismissed-foreclosure action and apply for a final judgment of foreclosure. Id. at ¶ 41.   Moreover, on December 27, 2013, complying with U.S. Bank, N.A. v. Guillaume, 209 N.J. 449 (2012),

ZGA, on behalf of PNC, issued a corrected/revised Notice of Intention to Foreclose to Plaintiff. Am. Compl., ¶ 43. That Notice named Wilmington Trust Company, not in its individual capacity, but solely as Successor Trustee to U.S. Bank National Association, as Trustee, for MASTR Alternative Loan Trust 2005-4 ("Wilmington Trust Company"), as the holder of Coles' mortgage as of June 25, 2013. Id. at ¶ 37. See Assignment of Mortgage dated June 25, 1013. According to Plaintiff, she did not become aware that Wilmington Trust Company was the holder of her mortgage until she was served with the revised notice on December 31, 2013. Id. ¶¶ at 46-48.

Subsequently, on March 13, 2014, Plaintiff initiated this action. Following this Court's Order, dated November 16, 2014, Plaintiff filed an Amended Complaint, alleging that Defendants collectively violated: (1) 15 U.S.C. § 1692(f)(1) by using unfair or unconscionable means to collect or attempt to collect an unauthorized amount, (2) 15 U.S.C. § 1692(g)(b) for their involvement in collection activities and communication during the 30-day period inconsistent with and overshadowing her rights and, (3) 15 U.S.C. § 1692(d) by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff by continuing to pursue the collection of a disputed and unverifiable debt, filing suit on an invalid debt, and forcing Plaintiff to defend against an invalid action. Id. at ¶¶ 61- 65.

4

The gravamen of Plaintiff's claim is her allegation that the assignment of her mortgage is "rigidly governed and controlled by the Pooling and Servicing Agreement dated as of May 1, 2005 that pertains to MASTR Alternative Loan Trust 2005-4 along with Mortgage Pass-Through Certificates, Series 2005-4." Id. at ¶ 49. Plaintiff alleges that based on certain terms of that Pooling Agreement, all assignments of loans governed by the agreement, such as her mortgage, had a "Closing Date" of May 27, 2005. Id. at ¶ 50. Based on that "Closing Date," Plaintiff avers that the assignment of her mortgage must have taken place sometimes prior to May 27, 2005, which date is before the 2009 state foreclosure action. See Id. at ¶ 56. In that connection, Plaintiff claims that the alleged transfer of her mortgage on June 25, 2013, could not have occurred since the loan was assigned prior to May 2005. According to Plaintiff, not only did Defendants misrepresent National City as the creditor in the 2009 state foreclosure action, but Defendants also purposely concealed the transfer of the loan by listing an incorrect, later date of June 2013 on the Assignment of Mortgage.[2]

---

[2]    Plaintiff also alleges that the June 25, 2013 assignment was "invalid." However, Plaintiff's theory of liability under the FDCPA is that Defendants fraudulently concealed the true holder of her mortgage in the 2009 state court foreclosure action, which assumes that the transfer occurred prior to 2009, in 2005. Therefore, it cannot also be Plaintiff's position that the assignment of her loan to Wilmington Trust Company in 2013 was invalid.   Indeed, if such a transfer was invalidated, National City/PNC would have been not only the owner of the loan in 2009,

Id. at ¶ 42. Taken together, Plaintiff avers, the 2005 foreclosure action filed by National City was "...flatly a 'sham,' 'a piece of frivolous litigation' and 'a fraud on the court and all involved parties'" in violation of the FDCPA. Id. at ¶ 59.

In the present matters, Defendants move to dismiss Plaintiff's claims on various grounds, including timeliness and failure to state a claim under the FDCPA.

## I.   Standard of Review

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); see also Fed.R.Civ.P. 8(a) (2) ("[a] pleading that states a claim for relief ... must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed R. Civ P.

---

but would still be the owner of her loan, and there could be no FDCPA claim related to the 2009 state foreclosure filing.

6

12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has acted lawfully." Id. (citing Twombly, 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232.

When presented with a motion to dismiss, the court should engage in a two-part analysis. Fowler, 578 F.3d at 210. First, the court must separate the factual and legal elements of each claim. Id. It must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009)). Second, the

7

court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips, 515 F.3d at 234–35); see Covington v. International Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' ... The pleading standard 'is not akin to a 'probability requirement,' '... to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'"(citations omitted)).

## II.  Statute of Limitations

Under 15 U.S.C. § 1692k of the FDCPA, a plaintiff must bring a claim within one year from the date on which the violation occurs.  See 15 U.S.C. § 1692k(d).  Defendants argue that Plaintiff's claims are barred by the statute of limitations because Plaintiff had only one year to commence this action after National City filed a state foreclosure complaint on August 5, 2009.  Put differently, it is Defendants' position that the statute of

8

limitations began to run on the date when National City commenced the state action because that is the date on which Plaintiff claims the alleged violation occurred – filing the complaint in the name of National City when it was not a mortgagor on that date. Plaintiff maintains, however, that Defendants fraudulently concealed the true identity of her mortgage holder, i.e., Wilmington Trust Company. Therefore, Plaintiff contends that, under the doctrine of equitable tolling, the statute of limitations did not begin to run until December 31, 2013, when she was served with the revised Notice of Intention to Foreclose, which named Wilmington Trust Company as the holder of Plaintiff's mortgage.

The doctrine of equitable tolling is only applicable when timely filing was prevented by extraordinary or sufficiently inequitable circumstances, and in that regard, equitable tolling should be sparingly applied by courts.[3] Santos v. United States, 559 F.3d 189, 197 (3d Cir. 2009); Parker v. Pressler & Pressler, LLP, 650 F. Supp.2d 326, 340 (D.N.J. 2009); see Glover v. F.D.I.C., 698 F.3d 139, 151 (3d Cir. 2012); Seitzinger v. Reading Hosp. &

---

[3]   The Court notes that the Third Circuit has not had the occasion to address the question whether the FDCPA's statute of limitations is jurisdictional.   Some circuits, like the Eighth Circuit, have found that the statute of limitations under the FDCPA is indeed a jurisdictional inquiry, see Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 262 (8th Cir. 1992), and therefore, the FDCPA is "not subject to waiver or tolling." See, e.g., Zhang v. Haven-Scott Assocs., No. 95-2126, 1996 U.S. Dist. LEXIS 8738, at *34 (E.D. Pa. Jun. 21, 1996).   As discussed infra, the Court need not decide this question here.

Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999).   That said, a
plaintiff may be entitled to equitable tolling if the conduct of
the defendant prevented the plaintiff from ascertaining the
viability of his or her claim within the limitations period. Kliesh
v. Select Portfolio Servicing Inc., 419 Fed. Appx. 268, 271 (3d
Cir. 2011). To properly plead fraudulent concealment, a plaintiff
must allege: (1) that the defendant actively misled the plaintiff,
(2) which prevented the plaintiff from recognizing the viability
of his or her claim within the limitations period, (3) where the
plaintiff's ignorance is not attributable to his or her lack of
reasonable due diligence in attempting to uncover the relevant
facts. Mathews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 256
(3d Cir. 2001); see Forbes v. Eagleson, 228 F. 3d 471 (3d Cir.
2000).   Importantly, these factors must be pled with particularity
pursuant to Rule 9(b). Kontonotas v. Hygrosol Pharm. Corp., 424
Fed. Appx. 184, 187 (3d Cir. 2011); Fuqua v. Bristol-Meyers Squibb
Co., 926 F.Supp.2d 538 (D.N.J. 2013).

   **A.   Equitable Tolling as to ZGA**

   Plaintiff maintains that her claims against ZGA should be
equitably tolled because Defendants collectively engaged in
affirmative acts to conceal the transfer of Plaintiff's loan to
Wilmington Trust Company, prior to 2009. [4]   However, ZGA contends

---

[4]   Plaintiff also argues that the discovery rule tolls the
FDCPA's statute of limitations.  For one, it is not clear that the

that, based on the allegations, ZGA was not involved in any act that mislead Plaintiff.[5]   Indeed, the Amended Complaint only attributes two affirmative acts to ZGA: (1) the filing of the initial foreclosure complaint in 2009, and (2) the issuance of a corrected Notice of Foreclosure and Order to Show Cause in December 2013. Compl. ¶¶ 20, 46-47.   I do not find that equitable tolling applies to the claim asserted against ZGA.

As to the filing of the 2009 state court complaint, Plaintiff alleges in a conclusory manner that Defendants, including ZGA, collectively concealed the fact that National City was not the holder of Plaintiff's loan.   However, Plaintiff fails to allege, under the heightened pleading requirements, that ZGA was aware of the fact that Plaintiff's loan was assigned to Wilmington Trust Company prior to filing the state court foreclosure action.   Absent any knowledge on its part, ZGA could not have fraudulently concealed the fact that National City was not the holder of Plaintiff's mortgage.   See Warner v. Ross, 164 Fed. Appx. 218, 220 (3d Cir. 2006); Parkhill v. Gordon, 80 Fed. Appx. 223, 226-27 (3d

---

discovery rule applies in the context of the FDCPA.   See Goodson v. Bank of Am., N.A., 600 Fed. Appx. 422, 427 (6th Cir. 2015); Mattson, 967 F.2d at 262.   Even if the discovery rule applies, Plaintiff's entire argument on tolling is premised on an active concealment theory, rather than the discovery rule.   Therefore, I will only address Plaintiff's tolling arguments in the context of fraudulent concealment.

[5]   Unlike Spahr and PNC, ZGA does not dispute that it is a debt collector for the purposes of the FDCPA.

Cir. 2003); <u>Bynum v. Trs. of the Univ. of Pa.</u>, No. 15-1466, 2015 U.S. Dist. LEXIS 96614, at *15-16 (E.D. Pa. Jul. 23, 2015)("[f]raudulent concealment may be intentional or unintentional, but mere mistake, misunderstanding, or lack of knowledge is insufficient."). Therefore, because there are no allegations that ZGA had any knowledge that National City was not the true holder of Plaintiff's mortgage, Plaintiff has failed to allege that the filing of the state court complaint is an act of concealment on the part of ZGA.

Next, contrary to Plaintiff's arguments, the revised Notice of Intention to Foreclose sent by ZGA in December 2013 was also not an act of concealment. Instead, that Notice actually provided Plaintiff with the information that Wilmington Trust Company was allegedly the owner of Plaintiff's loan, albeit the Notice did not indicate the date on which the assignment of Plaintiff's mortgage took place. In fact, Plaintiff's reasoning for the application of equitable tolling primarily rests on the allegedly false statements made by Spahr and National City in the 2009 Interrogatories, i.e., that National City is the holder of Plaintiff's mortgage and that there was no assignment; it is not alleged that ZGA had any involvement in the preparation or answering of those interrogatories.

In sum, because Plaintiff fails to allege that ZGA actively mislead Plaintiff, equitable tolling is not warranted.

Accordingly, Plaintiff's claim against ZGA is time barred since this action was filed against ZGA in March 2014, more than three years after the statute of limitations ran in connection with ZGA's filing of the 2009 foreclosure complaint.

**B.    Equitable Tolling as to Spahr and National City**

Unlike ZGA, Plaintiff's theory for fraudulent concealment against Spahr and National City is more compelling.  In support of her allegation that National City and Spahr actively misled Plaintiff, Plaintiff points to the 2009 Interrogatories, in which Spahr, as counsel for National City, represented, and Plaintiff was led to believe, that National City was the owner of Plaintiff's debt and that her loan had not been assigned.  In that connection, Plaintiff alleges that she was prevented from recognizing any available defenses during the state foreclosure action, such as lack of standing or frivolous litigation. Furthermore, Plaintiff claims that she was prevented from bringing her FDCPA claim within the limitations period because she did not learn of the assignment until December 31, 2013.  Finally, Plaintiff alleges that she exercised sufficient due diligence before concluding that the mortgage had not been assigned by explicitly asking National City and Spahr, during the foreclosure action, whether the mortgage had been assigned and for the name and address of the lender.

It is a close question whether these allegations, which form Plaintiff's bases for the application of equitable tolling as to

claims asserted against Spahr and National City, are sufficient under Rule 9(b).  I, nevertheless, need not decide this issue because I find, based on the Amended Complaint's allegations, that National City and Spahr are not debt collectors under the FDCPA.

## III.  "Debt Collector"

The purpose of the FDCPA is to protect consumers from debt collectors by eliminating abusive debt collection practices. <u>See</u> 15 U.S.C. § 1692(e).  As a threshold determination under the FDCPA, a defendant entity, such as a law firm, must be a "debt collector" as defined within the statute.  Indeed, the FDCPA proscribes that "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" is a "debt collector."  15 U.S.C. § 1692(b).  This provision of the FDCPA has been interpreted to apply to entities and persons that collect debts on behalf of others; however, the FDCPA, in general, does not apply to creditors attempting to collect debts on their own behalf. <u>See</u> <u>Staub v. Harris</u>, 626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf."); <u>Schaffhauser v. Citibank (S.D.) N.A.</u>, 340 Fed. Appx. 128, 130 n. 4 (3d Cir. 2009).

Here, Plaintiff alleges that National City violated the FDCPA when it commenced the 2009 state foreclosure action.  Plaintiff contends that National City assigned the mortgage to Wilmington Trust prior to the initiation of the foreclosure action, and therefore, National City was not the true creditor during the time the state lawsuit commenced.  In that regard, Plaintiff maintains that National City's attempt to collect a debt which it no longer owned makes National City a debt collector.  In the same vein, Plaintiff asserts that National City was at the very least a servicing agent that "acted expressly in the capacity of a debt collector in connection with the state court foreclosure action."[6]

To properly plead that a defendant entity is a "debt collector," a plaintiff must allege facts that the defendant regularly collects or attempts to collect debts. Courts have debated what constitutes "regularity" under the FDCPA, and have set forth two different frameworks. The "aggregate" framework examines "the amount of debt collection performed in the aggregate," and "establishe[s] threshold percentages of how much debt collection activity qualifies as 'regular' and how little

---

[6]     National City argues that it is not a debit collector because it brought the foreclosure action against Plaintiff as a creditor. However, on this motion, the Court has to take as true Plaintiff's allegation that her loan was assigned to Wilmington Trust Company prior to the commencement of the 2009 state lawsuit and that National City misrepresented itself as a creditor in that lawsuit. Nevertheless, National City is not a debt collector for the reasons explained, infra.

does not." Oppong v. First Union Mortg. Corp. 407 F. Supp. 2d 658, 664 (E.D. Pa. 2005) (vacated in part on different grounds). On the other hand, the "frequency" approach focuses on the regularity of the defendant's debt collection, regardless of its relation to the defendant's other business activities. Id. at 662. Indeed, while the Third Circuit has not explicitly adopted a particular approach, it has cited approvingly cases from the Ninth and Second Circuits, which have adopted the "frequency" approach. See Oppong v. First Union Mortg. Corp., 215 Fed. Appx. 114, 119 (3d. Cir. 2007)(citing Romine v. Diversified Collection Services, Inc., 155 F.3d 1142, 1146 (9th Cir. 1998) and Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll, & Bertolotti, 374 F. 3d 56, 62-63 (2d Cir. 2008)).

A determination under the frequency approach is a "fact intensive inquiry." Greaves v. Ann Davis Associates Inc., 2015 WL 668227, *4 (D.N.J. Feb. 17, 2015). There are a number of factors that a plaintiff may allege to sufficiently plead the regularity requirement:

> "(1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations."

<u>Goldstein</u>, 374 F. 3d at 62 (2d Cir. 2008); <u>Greaves</u>, 2015 WL 668227, at *4.

Here, Plaintiff has failed to sufficiently allege that National City is a "debt collector" within the meaning of the statute. While Plaintiff avers that National City could not have been the creditor of the mortgage when Plaintiff's loan defaulted, that assertion – alone – is not sufficient to plead that National City is a debt collector.  When applying the <u>Goldstein</u> factors, Plaintiff's Complaint does not allege facts indicating the number of debt collection communications issued, or the frequency of such communication or litigation. Furthermore, Plaintiff does not indicate in her Complaint whether PNC has personnel specifically assigned to work on debt collection activity, or whether they have systems in place or hired any contractors to complete such tasks. In regards to the final factor, Plaintiff does not allege that National City or PNC has any on ongoing client relationship with another entity.

Simply, Plaintiff only alleges that National City sent her communications during the state foreclosure proceedings that were intended to collect solely her debt.  Allegations of communications sent to Plaintiff alone are insufficient to demonstrate that National City is a "debt collector" because they fail to meet the "regularity" requirement.  Indeed, the Third Circuit has held that

17

"the requirement that debt collection be done 'regularly' would exclude a person who collects debt for another in an isolated instance . . . ." See Siwulec v. J.M. Adjustment Services LLC, 465 Fed. Appx. 200, 203 n.3 (3d Cir. 2012) (quoting S.Rep. No. 95-382, 95th Cong. 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697-98); see also Heredia v. Green, 667 F.2d 392, 399 (3d Cir. 1981); Silva v. Mid Atlantic, 277 F.Supp.2d 460, 464 (E.D. Pa. 2003).  In that connection, one instance of debt collection on the part of National City is insufficient to plead that National City regularly collects debts.  Greaves, 2015 WL 668227 at *4.  Accordingly, because Plaintiff did not sufficiently allege National City is a "debt collector" under the FDCPA, Plaintiff's claim against National City is dismissed without prejudice.

For similar reasons, the Court finds that Plaintiff has not sufficiently alleged that Spahr is a debt collector under the FDCPA.  In her Amended Complaint, Plaintiff avers, in a conclusory manner, that Spahr is a debt collector.  The Supreme Court has previously determined that attorneys may be considered "debt collectors" if they regularly engage in consumer debt collection activities, including litigation.  See Heintz v. Jenkins, 514 U.S. 291, 293 (1995); see also Romea v. Heiberger & Associates, 163 F.3d 111, 117 (2d Cir. 2004) (finding that notices issued by a law firm may constitute debt-related communications and preparation of such notices constitutes debt collection activity within the scope

18

of the FDCPA); Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 230 (4th Cir. 2007) ("The FDCPA clearly defines the parties and activities it regulates. The Act applies to law firms that constitute debt collectors, even where their debt-collecting activity is litigation").  While the Third Circuit has not developed any factors in determining whether a law firm is a debt collector, other circuits have held that a plaintiff must plead, at a minimum, that the law firm collects debts as a matter of course, or as a substantial part of its practice.  See Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999) (finding that the factors to consider in determining whether a law firm regularly collects debts include: the volume of attorney's collection activities, frequent use of debt collection letters, and the relationship between attorney and the collection agency); Silva, 277 F.Supp.2d at 466.

Here, Plaintiff does not sufficiently allege that Spahr is a debt collector.  Plaintiff has failed to plead any facts that would even suggest that Spahr collects debts as a matter of course or as a substantial part of its practice.  More specifically, Plaintiff does not include any allegations regarding the volume of Spahr's collection activities.  Nor does Plaintiff allege that Spahr has any relationship with collection agencies.  Rather, like her allegations against National City, Plaintiff only provides conclusory averments that Spahr was a debt collector, which

allegations are insufficient to establish that Spahr regularly engages in the practice of debt collection.

**CONCLUSION**

Accordingly, for the reasons stated above, Defendants' Motions to Dismiss are **GRANTED,** and Plaintiff's claims are dismissed without prejudice.


DATED:  July 29, 2015                    /s/ Freda L. Wolfson
                                         Freda L. Wolfson
                                         United States District Judge